RICE *v.* CITY OF PONTIAC.

1. MUNICIPAL CORPORATIONS — SIDEWALKS — BOND — CONTRACTS— TRIAL—CHARGE.

Instructions to the jury that plaintiff, suing to recover under a city ordinance which rendered the city liable for half the cost of cement walks built by the city contractor, was entitled to recover as assignee of the property owners if the jury found that he had filed his bond as required by municipal regulation, and had been advised by one of the commissioners that the bond was good, although it was later rejected by the commissioners, and if the walk conformed to the requirements of the ordinance, *held* to be sufficiently favorable to defendant.

2. SAME—NEW TRIAL.

*Held,* that the refusal to grant a new trial was sufficiently supported by conflicting evidence.

Error to Oakland; Smith, J. Submitted October 15, 1912. (Docket No. 86.) Decided November 8, 1912.

Assumpsit by John W. Rice against the city of Pontiac for labor and materials. Judgment for plaintiff. Defendant brings error. Affirmed.

*Peter B. Bromley,* for appellant.

*Pelton & McGee,* for appellee.

MOORE, C. J. The plaintiff as assignee of certain property owners, along whose property the city had ordered cement sidewalks built, recovered a judgment for $189.50, being 4⅛ cents per square foot of the total cost of the walks. The case is brought here by writ of error.

It is insisted the city is not liable (1) because the plaintiff was not a licensed sidewalk builder for the year commencing May 1, 1911, and had not filed and had approved his bond as a sidewalk builder for that year; (2) because, under the ordinance under which the plaintiff claims to recover, the city did not undertake or agree to pay the plaintiff either personally or as assignee, but only property owners along the street upon which the sidewalk was laid. It is also said the court erred in his refusal to set aside the verdict and grant a new trial for the reason that the verdict of the jury on the question as to whether the sidewalks charged for by the plaintiff were defective walks, and were not built in compliance with the ordinance of the city of Pontiac, and the specifications in reference to building of cement sidewalks was against the clear weight of the evidence in the case upon such question. In May, 1900, the following resolution was passed by the common council:

"That hereafter all contractors building cement walks for or in behalf of the city or any walk for which the city pays expenses for any portion of the cost thereof shall file a good and sufficient bond to the city of Pontiac in the sum of five hundred dollars, guaranteeing the walks for a period of five years."

The ordinances germane to the issue presented which were in force at the time the walk was built are as follows:

" Section 1. Hereafter when a sidewalk has been ordered built by the common council of the city of Pontiac in said city and has been built by the same person or persons who have been contracted with to build walks for said city, if the same has been built and laid of flag stone or cement and as good as the best that is now laid on Saginaw street in said city, the said city will pay to the owners of the property along which said sidewalk has been so laid one-half of the actual value thereof not exceeding four and one-eighth cents per square foot.

" Section 2. On the completion of the said sidewalk the person entitled to said sum shall present his or her claim to the council in the same manner as is provided for the presentation of other claims and the council shall audit and allow the same, but it shall be a complete defense to said claim if it shall appear to the council that the said walk or the material used therein is defective or is not built in a substantial and workmanlike manner."

Pontiac now has the commission form of government. The records of the city show the following:

"PONTIAC, MICH., August 1, 1911.
" To the Honorable Commissioners of the City of Pontiac, Mich.
" *Gentlemen:*
" We, the undersigned, property owners and taxpayers, liable to assessment, do hereby most earnestly petition your honorable body for the construction of a sidewalk on Paddock from Raeburn to Prospect and on Prospect from Paddock to Saginaw North Side, and your petitioners will ever pray. C. McClelland, F. Burke, Ernest Radson, Ross & Slater Construction Co.; Prospect, Ray W. Long; Prospect, V. Wells; Church, Gates Bros.
" By Commissioner Osmun: Resolved, that the petition be received and the prayer granted."

The city engineer established the grade of the walk. Before its construction was commenced, and some time in August, the plaintiff filed his bond in due form with sureties, with the city clerk. He testified that, before he built the walk, he was informed by Commissioner Osmun

that the bond was all right.  This is denied by Mr. Os-
mun, but on the cross-examination he said in part:

"I said (to Mr. Rice) that his bond might be good, but
it hadn't been passed by the commission yet.  His bonds-
men might be good.  He asked me something about the
bondsmen, and I said that I considered them good.
That is true, they are good.  I don't know as I knew that
at the time his bond was in the hands of the city clerk.  I
think I heard it some way.  I couldn't say whether that
was before he started to build the walks or not."

Mr. Rice says he had no knowledge his bond was not
satisfactory to the commissioners until the walks were all
completed, and we do not discover anything in the record
in conflict with this testimony.  Mr. Osmun frequently
saw the walk while it was under construction.  The testi-
mony in relation to the character of the walk was very
conflicting.  That offered on the part of the plaintiff
tended to show that it was well built.  The testimony on
the part of the city was to the contrary.  Testimony on
the part of the plaintiff and Mr. Osmun's testimony shows
that before this walk was built Mr. Rice had built cross-
walks and sidewalks which had been directed to be built
by the city.  The testimony also discloses that the blanks
upon which were written the assignments from the prop-
erty holders to the plaintiff were furnished by the city,
and that it had furnished such blanks for several years,
and had paid the rebates to the contractors where so
assigned.

Those parts of the charge necessary to be quoted to show
what was submitted to the jury, are as follows:

"The city has prescribed as near as practicable the
amount of cement that shall be used in a load of gravel
or the proportion and the cement that shall be mixed with
the sand—that is, the proportion—because experience has
shown to the officials that taking it one time with another
that makes the most durable and best walk, and the prices
the property owners promise to pay, and the city promises
to rebate for is for work substantially built in compliance
with these specifications.

"It may seem a little harsh, but it is here, and the court can do no better than to call your attention to it. As a sort of penalty to compel sidewalk builders to comply with this ordinance and these specifications, it is enacted that failure to comply with these specifications shall be held to be a complete defense. The meaning of that is that the property owners may settle with the sidewalk builder if they wish to, but the city shall not pay any rebate where a sidewalk was not substantially built and complied with the specifications, and it shall be a complete defense; that is, the city shall not be liable at all for any rebate, unless there is a compliance.  *  *  *

"With regard to the assignments from the owners, I say to you technically there is no doubt but the city attorney is correct—that is, the commission has seen fit to insist that the rebate should go directly to the property owner, that they should enforce such a provision—but it appears in evidence that for years, as a matter of convenience, property owners, when a strip of walk has been constructed, have assigned their claims to the contractor, and he has collected the rebate all in one bunch, so I allow the case to go to the jury as far as these assignments are concerned, you will need pay no attention to them.  Mr. Rice is the legal holder of them under the practice that has obtained in the city.

"It is the claim of the plaintiff that he presented his bond in good faith, that the commissioner of streets told him his bond was all right, and that he proceeded with the work without any knowledge that his bond had not been officially accepted.  It is his further contention that the commissioner of public streets saw the plaintiff building the walks in question, and was there almost daily. Plaintiff further contends that the walk was built as a matter of fact in a substantial and workmanlike manner. Now, if you find from the evidence that the plaintiff in good faith performed this contract on which recovery in this suit is sought substantially, and I emphasize the word, 'substantially,' in all material particulars according to its terms, without wilful departure therefrom, or omission in the essential points, and that such performance is sufficient to entitle the plaintiff to recover in this suit— that is, provided he was told by the commission that his bond was all right.

"I charge you, further, that if you find that the city permitted the walks in question to be built, under an ordi-

nance allowing the property owners a rebate or a certain per cent., and if you find that the property owners assigned their claims to the rebate to the plaintiff, then the plaintiff would be entitled to whatever rebate the property owners would get under the ordinance. If you find that the plaintiff presented a bond, and left it with the city clerk, and if you further find that the plaintiff was told by the commissioner of public streets that his bond was all right, and, if you further find that, after leaving the bond with the city clerk, the plaintiff went ahead and built the walks in question with the knowledge and consent of the commissioner of public streets, then I charge you in that case that the city cannot now defeat this action on the ground that the bond was not officially accepted.

"The question, therefore for you to determine, in addition to the question of the bond, is this: Has there been a substantial compliance with the provisions of the ordinance in the construction of the walk? In other words, Is it a good and substantial walk, built in a good workmanlike manner of ordinarily good material, and as good as the best that is laid on Saginaw street in the city of Pontiac? And, if you find from the evidence that this walk is a good substantial walk, and that it does conform with the requirements of the ordinance, your verdict should be for the plaintiff for the amount claimed, if you also find as a fact that Commissioner Osmun told the plaintiff his bond was all right.

"Upon the part of the defense I charge you as follows: That there can be no recovery in this case simply because Mr. Rice left a bond with the city clerk. It appears the bond was later rejected by the commissioners and returned to him. I charge you, further, that if the jury find from the evidence in the case that the sidewalks charged for by the plaintiff in this case were not built and laid so as to be as good as the best cement sidewalks that are laid on Saginaw street in the city of Pontiac, and said walks and the material therein are defective and are not built in a substantial manner, then your verdict must be in favor of the defendant of no cause of action.

"In this case the burden of proof is upon the plaintiff, John W. Rice, to show by a fair preponderance of the evidence in the case that the sidewalks charged for were built and laid so as to be as good as the best cement sidewalks on Saginaw street, and that said sidewalk and the materials therein were not defective and were built in a

substantial and workmanlike manner, and if the plaintiff Rice has failed so to do, or if the evidence upon these questions is evenly balanced, then your verdict should be in favor of the city of no cause of action."

Upon the record as made, we do not think the city has any just complaint to the way in which the case was submitted to the jury.

Did the court err in refusing a new trial because the verdict was against the weight of the evidence? As before stated, the testimony was in sharp conflict. Its weight would depend much upon the appearance of the witnesses, their opportunities for knowledge, and their interest. The jury and the trial judge had the great advantage of seeing and hearing the witnesses.

We are not disposed to say it was reversible error, in view of the record, to refuse a new trial.

Judgment is affirmed.

STEERE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.